# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**DARLENE BURRELL,**

      **Plaintiff,**

**vs.**                                      **No. CIV 11-393 JP/RHS**

**HARLEY DAVIDSON MOTOR COMPANY, INC.,**
**a foreign corporation organized in Texas and doing**
**business in New Mexico; MOTORSPORTS OF**
**ALBUQUERQUE, LLC, a foreign limited liability**
**company organized in Florida and doing business in**
**New Mexico; MOTORCYCLE SAFETY FOUNDATION,**
**INC., a foreign nonprofit corporation doing business in New**
**Mexico; FRANK ALLEN; and JEFFREY PIPER,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

Defendants, Harley-Davidson Motor Company, Inc., Motorsports of Albuquerque, LLC,

Motorcycle Safety Foundation, Inc., Frank Allen, and Jeffrey Piper, move the Court to exclude

all testimony from Plaintiff Darlene Burrell's proposed expert witnesses, James R. Davis and

John C. Laughlin.[1] Plaintiff has identified Mr. Davis as an expert in motorcycle safety and Mr.

---

[1] On May 31, 2012, Defendants filed DEFENDANTS' *DAUBERT* MOTION TO
EXCLUDE THE TESTIMONY OF JAMES R. DAVIS AND JOHN C. LAUGHLIN (Doc. No.
109) (*Daubert* Motion). On June 25, 2012, Plaintiff filed PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY
OF JAMES R. DAVIS AND JOHN C. LAUGHLIN, AND MEMORANDUM IN SUPPORT
(Doc. No. 125) (Response). On July 9, 2012, Defendants filed DEFENDANTS' REPLY TO
PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO
EXCLUDE THE TESTIMONY OF JAMES R. DAVIS AND JOHN C. LAUGHLIN (Doc. No.
136) (Reply).

Laughlin as an expert in biomechanics.[2] On July 19, 2012, the Court held a pretrial conference during which the parties made arguments related to Defendants' *Daubert* Motion. Attorney Jesse Quackenbush represented Plaintiff, and attorneys Paul Yarbrough and Christopher Ryan represented Defendants. At the pretrial conference, defense counsel opined that a *Daubert* hearing is unnecessary because the briefing and exhibits include sufficient information for the Court to rule on Defendants' *Daubert* Motion. Plaintiff's counsel has not requested a *Daubert* hearing. Having considered the briefs and supporting exhibits and having heard the arguments of counsel at the pretrial conference, the Court concludes that Defendants' *Daubert* Motion should be granted in part and denied in part. Plaintiff's proposed expert witnesses, Mr. Davis and Mr. Laughlin, will be permitted to testify, but the Court will limit the scope of their testimony as described in this Memorandum Opinion and Order.

## BACKGROUND

Plaintiff makes the following allegations in her Amended Complaint.[3] Plaintiff visited Thunderbird Harley-Davidson/Buell at 5000 Alameda Boulevard in Albuquerque, New Mexico, for the purpose of purchasing a motorcycle. Amended Complaint ¶ 15. Plaintiff was fitted by Harley-Davidson employee Burns Forsythe. *Id.* ¶ 16. Mr. Forsythe concluded that the smallest showroom motorcycles, including the 499 cc Buell Blast, were too big for Plaintiff and commented to Harley-Davidson salesperson Leanne Early that "there wasn't a single bike in the store [he] would sell [Plaintiff] because [Plaintiff] was too small." *Id.* (first alteration in

---

[2] *See* PLAINTIFF'S 1ST SUPPLEMENTAL WRITTEN DESIGNATION OF EXPERT WITNESSES (Doc. No. 63).

[3] Plaintiff's allegations are provided for context and are taken from Plaintiff's SECOND AMENDED COMPLAINT FOR PERSONAL INJURIES AND MONEY DAMAGES (Doc. No. 52) (Amended Complaint), filed December 8, 2011.

original). At the time, Plaintiff was 4'9" tall and weighed approximately 190 pounds. *Id.* ¶ 15.

Nonetheless, Leanne Early talked Plaintiff into signing up for a "New Rider" course offered through the "Rider's Edge© Academy of Motorcycling." *Id.* ¶¶ 15, 17. Plaintiff hoped to obtain the training and experience necessary to get a New Mexico motorcycle license. *Id.* ¶ 17.

On January 22, 2011, Plaintiff began the range training portion of the Rider's Edge© course, which took place at a parking lot a few miles from the dealership. *Id.* ¶ 19. All students, including Plaintiff, were provided 499 cc Buell Blast motorcycles to use during the range training. *Id.* Shortly after instruction began, Plaintiff fell off the motorcycle, injuring tendons in her left ankle and upper right thigh. *Id.* Several people witnessed Plaintiff's fall, including Plaintiff's instructors Jeffrey Piper and Frank Allen, salesperson Leanne Early, and a range course inspector employed by Defendant Motorcycle Safety Foundation, Inc. *Id.*

Despite this first accident, Plaintiff returned on January 23, 2011, for the second day of range training. *Id.* ¶ 20. Plaintiff lost control of her motorcycle and ran into a concrete light pole. *Id.* Plaintiff's clothes became entangled in flag ropes that were attached to the light pole and that marked the range course boundaries. *Id.* The motorcycle came to rest on top of Plaintiff, and she was trapped beneath it by the flag ropes. *Id.* The exhaust pipe from the motorcycle burned Plaintiff's left leg, and Plaintiff suffered third degree burns and spinal sprains. *Id.* ¶¶ 20-21.

Plaintiff argues that Defendants were negligent and reckless, in that they (1) gave her a motorcycle that they knew was too large and powerful for her; (2) allowed an unreasonably dangerous condition to exist on the training course; (3) failed to warn Plaintiff of the danger created by the flag ropes, motorcycle, and training range; (4) failed to inspect the training range; (5) failed to train and supervise employees charged with maintaining, repairing, and inspecting the range; (6) concealed from Plaintiff their knowledge of the increased risk of harm and death

3

associated with novice riders using the Buell Blast motorcycle; (7) failed to adequately supervise

or train the course instructors; (8) failed to follow the self-prescribed guidelines for range

construction; and (9) allowed Plaintiff to continue taking the course after observing her obvious

difficulties with the motorcycle and her first accident. *Id.* ¶ 39. Plaintiff contends that

Defendants should be held jointly, severally, and vicariously liable for negligence. *Id.* ¶ 43.

Plaintiff seeks damages for pain and suffering, mental anguish, physical impairment,

disfigurement, medical costs, lost wages, reduced earning capacity, and loss of enjoyment of life,

as well as punitive damages. *Id.* ¶¶ 41-42.

## DISCUSSION

Defendants argue that Plaintiff's experts' testimony should be excluded as unreliable

under Rule 104 and Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow

Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See Daubert* Motion at 1. Plaintiff responds that her

experts should be permitted to testify because they are qualified and can offer reliable, relevant

information. Plaintiff asks the Court to admit the proposed expert witness testimony and to allow

the jury to weigh the credibility of each expert witness. Response at 11.

**A.    Standard for Admissibility of Expert Witness Testimony**

Rule 702, which governs the admissibility of expert witness testimony, provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the
> trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the
> case.

The proponent of the expert, in this case Plaintiff, bears the burden of satisfying Rule 702 and

establishing the admissibility of the testimony. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.1 (10th Cir. 2001).

In applying Rule 702, the district court serves as a "gatekeeper" to ensure the relevance and reliability of all proffered expert testimony. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert*, 509 U.S. at 589). By conducting a preliminary inquiry into an expert's qualifications and the admissibility of proffered evidence, a district court fulfills its initial obligation under Rule 104. *See* Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether a witness is qualified . . . or evidence is admissible.").

"To determine whether an expert opinion is admissible, the district court performs a two-step analysis. First, the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable." *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). "In reviewing whether an expert's testimony is reliable, the trial court must assess the reasoning and methodology underlying the expert's opinion." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (quotation marks and citation omitted).

Rule 702 grants the trial judge broad discretion in deciding reliability. *Kumho Tire*, 526 U.S. at 152. In *Daubert*, the Supreme Court set out a non-exhaustive set of factors that the district court may consider in determining whether proposed expert testimony is based on reliable methods and principles: (1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant

scientific or expert community. 509 U.S. at 593-94. But while a district court may consider the relevant *Daubert* factors in determining the admissibility of expert testimony, "the test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 141-42.

**B.      James R. Davis**

Plaintiff disclosed Mr. Davis as "a motorcycle safety expert" who "will testify as to the negligence of the Defendants, the safety of the Buell Blast for training new riders and the inadequacies of the training course." Doc. No. 63, at 3-4. In his expert report, Mr. Davis states that in forming his opinions he relied on Plaintiff's original Complaint and Amended Complaint; eleven DVDs showing an active Rider's Edge© class; Plaintiff's deposition with exhibits; the depositions of Defendant Frank Allen, Defendant Jeffrey Piper, Burns Forsythe, and Leanne Early; a number of Rider's Edge© and Motorcycle Safety Foundation publications; and photographs of Plaintiff with a Buell Blast motorcycle. Doc. No. 109-2, at 4.

Based on this underlying data, Mr. Davis proposes to offer the following findings and conclusions:

1.      Defendants failed to disqualify Ms. Burrell from participating in the Rider's Edge New Riders Course after Ms. Burrell gave them notice that she did not meet the course prerequisite of being able to ride a bicycle.

2.      Defendants failed to disqualify Ms. Burrell from participating in the Rider's Edge New Riders Course based on their inability to provide a suitably sized and fit motorcycle for her to learn to ride.

3.      Defendants failed to advise Ms. Burrell of the extent of the risk involved in learning to ride a motorcycle.

4.       Defendants failed to properly assess Ms. Burrell's marginal control of her motorcycle at the time of her first crash during the class.

5.       Defendants negligently used the Buell Blast motorcycle in training new motorcycle riders.

Doc. No. 109-2, at 17-20.

Although Mr. Davis offered five findings and conclusions in his expert report, in the Response Plaintiff narrowed the scope of Mr. Davis's proposed testimony to the following opinions: (1) that the Buell Blast motorcycle is unsuitable for use by a person of Plaintiff's height and complete lack of motorcycle experience; and (2) that Plaintiff should have been counseled out of the Rider's Edge© course as a consequence of her unsuitability for motorcycling and her crash on the first day of range training. Response at 6. Because Plaintiff has narrowed the scope of Mr. Davis's proposed testimony to these two opinions, the Court will consider only whether Mr. Davis may offer these opinions and will not address the admissibility of the other opinions expressed in Mr. Davis's expert report.

### 1.      Mr. Davis Is Qualified to Testify as an Expert in Motorcycle Safety.

Defendants argue that Mr. Davis is unqualified to offer expert testimony because (1) his "professional background is in finance and technology; he does not possess a college degree," (2) he "is not a professional educator and has not taught motorcycle safety classes in over fifteen years," (3) he "has taught only twelve motorcycle safety courses in his lifetime," and (4) he "has never taught the Rider's Edge curriculum." *Daubert* Motion at 8.

In the Response, Plaintiff explains that Mr. Davis is qualified to testify as an expert on motorcycle safety because (1) he "has been riding motorcycles for over fifty (50) years, and has traveled over 500,000 miles without an accident or ticket," (2) he has "received training and instructor certification from the Motorcycle Safety Foundation ("MSF"), a named Defendant,"

and (3) he "is the author of a two-volume reference book regarding motorcycle safety, and the co-author of other publications relating to motorcycle safety." Response at 6. Plaintiff also emphasizes that a person does not need a college degree to be qualified as an expert on motorcycle safety. *Id.* at 6-7.

In the Reply, Defendants argue that even if Mr. Davis is a qualified motorcycle safety expert, the opinions he seeks to offer in this case are unreliable because they are outside Mr. Davis's area of expertise.  Reply at 3-4. First, Defendants note that Mr. Davis has not been offered as an expert on proper motorcycle fit, and that Plaintiff's other proposed expert witness, Mr. Laughlin, also proposes to testify about motorcycle fit. *Id.* at 4 (citing Doc. No. 109-1, at 1). Second, Defendants assert that Mr. Davis has limited experience with the Buell Blast motorcycle. *Id.* (citing Doc. No. 109-3, at 93-94). Third, Defendants argue that Mr. Davis is unqualified to testify as to whether Plaintiff should have been disqualified from completing the class because he is not a professional motorcycle instructor. *Id.*

At the July 19, 2012, pretrial conference, Plaintiff's counsel explained that Mr. Davis and Mr. Laughlin will approach the issue of motorcycle fit from two different angles: Mr. Davis from the perspective of a motorcycle safety trainer and Mr. Laughlin from the perspective of a biomechanical engineer. Additionally, although Plaintiff's counsel conceded that Mr. Davis is not an expert on the Buell Blast motorcycle, specifically, he argued that Mr. Davis can provide reliable testimony about the variety of motorcycles more generally, including the range of motorcycle engine sizes, clutches, and weights. Finally, Plaintiff's counsel reiterated that Mr. Davis has obtained certification from Defendant Motorcycle Safety Foundation as a motorcycle safety instructor and has counseled students out of taking motorcycle training classes in the past.

The Court concludes that Mr. Davis possesses sufficient specialized knowledge and

experience to permit him to testify about issues of motorcycle safety, including whether it was safe for a person of Plaintiff's size and experience to train using a Buell Blast motorcycle. Additionally, Mr. Davis has sufficient experience to provide general testimony about the variety of motorcycles, including motorcycle engine sizes, weights, and clutches. And because Mr. Davis has completed motorcycle instructor training and has obtained instructor certification from the Motorcycle Safety Foundation, Mr. Davis is qualified to give his opinion regarding whether the course instructors should have counseled Plaintiff out of the Rider's Edge© course.

> **2.      Mr. Davis's Proposed Testimony Is Sufficiently Reliable to Be Admissible.**

Defendants argue that Mr. Davis's opinions are unreliable because his "technique involved nothing more than a review of documents and the proffering of his opinion." *Daubert* Motion at 7. With regard to Mr. Davis's opinions concerning motorcycle fit, Defendants assert that eyewitness accounts from other witnesses contradict Mr. Davis's finding that Plaintiff could not put both her feet on the ground while seated on the Buell Blast motorcycle. *Id.* at 8. Moreover, Defendants criticize the fact that Mr. Davis has not relied on any published studies or evidence in coming to his opinion that the Buell Blast is inappropriate for novice riders, and Defendants argue that Mr. Davis should not be allowed to testify about the clutch on the Buell Blast because he is not an expert in motorcycle design or engineering.[4] Defendants also contend that Mr. Davis was speculating when he opined that the class instructors should have disqualified Plaintiff from completing the class after her first crash. *Id.*

---

[4] In his expert report, Mr. Davis opines that the clutch lever on a Buell Blast has an extremely narrow friction zone compared to other motorcycles, and therefore that new riders are more likely to "pop the clutch" and lose control of the bike. *See* Doc. No. 109-2, at 16. Mr. Davis states that the manufacturer has addressed this problem by providing an optional remedial kit in the form of a new or additional clutch plate. *Id.* In Mr. Davis's view, the narrow friction zone is one of the causes of Plaintiff's second crash. *Id.*

Plaintiff replies that, in coming to his opinions, Mr. Davis applied years of experience and training to his review of the documents and video in this case. Response at 8. Because Defendants produced the underlying data that Mr. Davis relied on, Plaintiff contends that the data provides a reliable foundation for Mr. Davis's opinions. *Id.* Additionally, Plaintiff explains that one witness's opinions are not rendered inadmissible merely because they are contradicted by the opinions of other witnesses. *Id.* Finally, Plaintiff argues that Defendants are free to cross-examine Mr. Davis and argue to the jury that his opinions should be given less weight than the opinions of Defendants' witnesses. *Id.*

The Court concludes that Mr. Davis's proposed opinions, as described on page six of Plaintiff's Response, are based upon sufficient facts and data, have been applied reliably to the facts of this case, and will assist the trier of fact. Accordingly, the Court will permit Mr. Davis to express the opinions described on page six of Plaintiff's Response.

**C.**     **John C. Laughlin**

Plaintiff proffers John Laughlin as an expert in biomechanics.[5] *See* Doc. No. 63. Mr. Laughlin possesses a Bachelors of Science degree in bioengineering and a Master of Engineering degree in bioengineering.[6] Mr. Laughlin is a practicing biomedical and mechanical engineer, licensed in Texas. *Id.*

---

[5] The Tenth Circuit has defined biomechanics as 'the study of the action of external and internal forces on the living body, especially on the skeletal system." *Tuato v. Brown*, 85 Fed. App'x 674, 677 (10th Cir. 2003) ( quoting Random House Unabridged Dictionary 210 (2d ed. 1993)); *see also Ingraham v. KIA Motors Am., Inc.*, 2007 WL 2028940, at *3 n.12 (W.D. Okla. July 10, 2007) ("Biomechanics is 'the science concerned with the action of forces, internal and external, on the living body.'" (quoting Stedman's Medical Dictionary (25th ed. 1989))).

[6] *See* AFFIDAVIT/REPORT OF JOHN LAUGHLIN, M.ENG., P.E., Ex. A. to Defendants' *Daubert* Motion (Doc. No. 109-1), at 1.

In forming his opinions, Mr. Laughlin reviewed photographs, video, incident reports created by Rider's Edge© instructors, deposition testimony, a variety of literature relating to the Rider's Edge© course and other training programs, and information about the Buell Blast from internet websites. *Id.* at 2. Mr. Laughlin also inspected the range training course. *Id.* Mr. Laughlin explains in his report that he applied biomechanical principles to his analysis of the motorcycle and Plaintiff, and that he applied mechanical engineering principles to his analysis of the course design. *Id.* Mr. Laughlin also represents that his opinions and conclusions are based on his skill, education, and experience, and that they are based on a "reasonable degree of engineering probability." *Id.* at 1.

In his expert report, Mr. Laughlin offers the following four conclusions:

1.    Biomechanically, Ms. Burrell was not fit to train on a Buell Blast motorcycle. She is too short to reach the ground with enough of her feet to provide her with the ability to balance or walk the bike safely and effectively.

2.    Boots with platform soles were not an acceptable solution for motorcycle fit when dealing with a completely inexperienced rider.

3.    The flag ropes used as a boundary to the range constituted an unreasonable and hazardous condition for Ms. Burrell and it was foreseeable that an inexperienced rider such as her will ride beyond the edge of the course and interact with the flag ropes, causing the rider to fall from the bike or become ensnared and injured.

4.    Traffic cones or "horses" would have provided a safer solution to the flag ropes and are commonly used devices for restricting traffic.

*Id.* at 5.

1.    **The Reliability of Mr. Laughlin's Proposed Testimony**

Defendants argue that although Mr. Laughlin is being offered as a scientific expert, he engaged in speculation to reach his conclusions and failed to apply biomechanical or mechanical engineering principles. *Daubert* Motion at 12.

      **a.**      **Mr. Laughlin May Offer his Opinions that (1) Biomechanically, Plaintiff Was Not Fit to Train on a Buell Blast Motorcycle, and (2) Wearing Thick-Soled Shoes Is an Inadequate Solution to Poor Motorcycle Fit.**

Defendants argue that Mr. Laughlin's first two proposed opinions are unreliable because Mr. Laughlin did not observe Plaintiff on a Buell Blast motorcycle or evaluate whether she could balance on one. *Id.* Defendants contend that Mr. Laughlin did not review studies or research about motorcycle fit, point to manufacturer standards, reconstruct Plaintiff's accident, or measure a Buell blast. *Id.* Additionally, Defendants note that Mr. Laughlin has not cited any studies or publications discussing proper foot placement or footwear for inexperienced motorcycle riders. *See id.* at 13-14.

In the Response, Plaintiff explains that it was unnecessary for Mr. Laughlin to observe Plaintiff on a Buell Blast motorcycle because Defendants seated Plaintiff on a Buell Blast at her deposition and documented the results with photographs. Response at 9.  Plaintiff contends that Mr. Laughlin viewed Defendants' photographs through the lens of his education and experience. *See* Response at 9. Relying on principles of biomechanics and anatomy, Mr. Laughlin concluded that Plaintiff could not adequately rest the balls of both feet on the ground and opined that balancing on one's tiptoes is unsafe. *Id.* at 10. In Plaintiff's view, Mr. Laughlin also applied biomechanical principles to conclude that Plaintiff's poor motorcycle fit could not be remedied by changing the position of Plaintiff's feet with thick-soled shoes. *Id.* Finally, Plaintiff argues that Mr. Laughlin's opinion regarding thick-soled shoes is reliable because Mr. Laughlin relied on a Rider's Edge© publication, which states that a rider should wear familiar footwear while learning to ride a motorcycle. *Id.*

The Court concludes that Mr. Laughlin's opinions regarding motorcycle fit and the use of

thick-soled shoes are reliable enough to be admissible at trial. Mr. Laughlin is qualified to provide an expert opinion regarding whether, under the principles of biomechanics and anatomy, enough of Plaintiff's feet made contact with the ground to allow her to balance safely on top of the Buell Blast motorcycle and whether thick-soled shoes solved the problem posed by Plaintiff's height. Mr. Laughlin based his opinions on a reliable foundation, Defendants' photographs of Plaintiff seated on a Buell Blast motorcycle, and Mr. Laughlin's opinions will assist the jury. The Court sees some merit in Defendants' arguments regarding perceived inadequacies in Mr. Laughlin's methodology. But the Court concludes that Defendants can sufficiently explore these perceived deficiencies on cross-examination. The jury is capable of deciding how much weight Mr. Laughlin's testimony deserves. *See Diestel v. Hines* 506 F.3d 1249, 1269 (10th Cir. 2007) (noting that the "credibility and weight of expert testimony are matters within the jury's province and need not be accepted as conclusive"). The Court will permit Mr. Laughlin to testify that (1) biomechanically, Plaintiff was not fit to train on a Buell Blast motorcycle because she is too short, and (2) boots with platform soles were not an acceptable solution for poor motorcycle fit in the case of a completely inexperienced rider.

### b.    Mr. Laughlin Is Unqualified to Testify about the Safety of the Range Course

Finally, as for Mr. Laughlin's third and fourth opinions regarding the use of flag ropes to mark the boundary of the range course, Defendants argue that Mr. Laughlin's opinions are based on speculation and unrelated to Mr. Laughlin's field of expertise. *Id.* at 14. In his deposition, Mr. Laughlin testified (1) that he is not an expert in motorcycle range course set up, (2) that he could not say within a reasonable degree of engineering probability what role the flag ropes may have played in causing Plaintiff's accident, and (3) that he did not rely on any industry standards,

13

government standards, or regulations in coming to his opinion that the flag roping was an inappropriate boundary for the range course. Doc. No. 109-4, at 2, 16-17. Instead, Mr. Laughlin based his opinion on the height of the rope and the fact that it was attached to an immovable object, thereby posing a risk that a person or motorcycle could be knocked down by the rope. *Id.* at 17. Because Mr. Laughlin admitted he is not an expert in motorcycle range course setup, Defendants ask the Court to preclude Mr. Laughlin's testimony on this subject. *Id.*

In the Response, Plaintiff does not address Defendants' arguments regarding Mr. Laughlin's opinions about the safety of the range course and the use of flag ropes. At the July 19, 2012, pretrial conference, the Court asked whether Plaintiff's counsel agreed with Defendants' position that Mr. Laughlin is unqualified to testify about traffic barriers and motorcycle range course design and safety. Plaintiff's counsel responded that Plaintiff had not intended to concede that Mr. Laughlin is unqualified to testify about range course safety or the use of flag ropes. In Plaintiff's view, the record demonstrates Mr. Laughlin's qualifications to offer opinions about the safety of the range course.

The Court concludes that Plaintiff has not met her burden of proving that Mr. Laughlin is qualified to testify about the safety of the range course. It appears that Mr. Laughlin relied primarily on common sense in coming to his conclusion that a rope attached to an immovable object might cause people to fall. *See Goebel v. Denver & Rio Grande W.R. Co.*, 346 F.3d 987, 992 (10th Cir. 2003) ("It is critical that the district court determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." (quotation marks and citation omitted)). The Court concludes that Mr. Laughlin's opinions regarding the range course are not based on Mr. Laughlin's scientific or technical knowledge and would not assist the trier of fact. Accordingly, Mr. Laughlin will not be

14

permitted to testify about the safety of the range course.

**IT IS ORDERED THAT** DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE THE

TESTIMONY OF JAMES R. DAVIS AND JOHN C. LAUGHLIN (Doc. No. 109) is granted in

part and denied in part as follows:

(1)     Plaintiff's expert witness James R. Davis will be permitted to offer his opinions

        that (a) the Buell Blast motorcycle was unsuitable for use by a person of

        Plaintiff's stature and lack of motorcycle experience and (b) Plaintiff's instructors

        should have counseled Plaintiff out of the Rider's Edge© course because she is

        unsuitable for motorcycling and had a crash on the first day of range training;

(2)     Plaintiff's expert witness John C. Laughlin will be permitted to offer testimony

        from a biomechanical perspective regarding (a) whether Plaintiff was fit to train

        on a Buell Blast motorcycle and (b) whether thick-soled shoes are an adequate

        solution to poor motorcycle fit; and

(3)     Plaintiff's expert witness John C. Laughlin cannot testify regarding the safety of

        the range course and may not provide his opinions that (a) the flag ropes used as a

        boundary to the range course constituted an unreasonable and hazardous

        condition and (b) that traffic cones or "horses" would have provided a safer

        boundary.

_____

UNITED STATES DISTRICT COURT JUDGE